**IN THE UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JODIE SULLIVAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. |
| VS. | ) | |
| | ) | |
| LEWIS AUTOMOTIVE GROUP, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

COMES NOW, Jodie Sullivan, by and through her attorney, Joseph T. Welsh, and makes this complaint against Lewis Automotive Group, Inc. In support thereof, Jodie Sullivan states to the Court the following:

**PARTIES, JURISDICTION AND VENUE**

1. Jodie Sullivan ("Jodie") is a Florida resident.

2. Lewis Automotive Group, Inc. ("Lewis") is a Kansas corporation that may be served at 4450 N. Vine Street, Hays, Kansas 67601 and is also an employer as defined in Title VII, 42 U.S.C. § 2000e(b).

3. Lewis is an employer who employs more than fifteen (15) employees.

4. The Court has federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as Jodie's claims arise under federal law. More specifically, Jodie alleges violations of, and retaliation for reporting such violations of Title VII of the Civil Rights Act, codified at 42 U.S.C. § 2000e et. seq., and the Americans with Disabilities Act, codified at 42 U.S.C. § 12101 et. seq.

5. Venue is proper pursuant to 28 U.S.C. § 1391 as most of the acts giving rise to the claims set forth herein occurred in Garden City, Kansas.

6. Jodie has exhausted her administrative remedies by filing a charge of discrimination with the EEOC and has received a right to sue letter issued by the EEOC, attached as Exhibit A.

7. This complaint has been filed within ninety (90) days of receipt of the right to sue letter received by Jodie.

## FACTS

8. On January 2, 2024, Jodie Sullivan ("Jodie") began working as a sales consultant at Lewis Automotive Group ("Lewis"), at the Lewis Chevrolet, Garden City, Kansas location.

9. Jodie had previously worked at Lewis at the Garden City location, but had left because of the hostile work environment.

10. Jodie decided to come back to work at Lewis when the General Manager, Mike Shook called her and persuaded her that the hostile and juvenile attitudes previously on display in the workplace had been remediated.

11. When Jodie initially returned to Lewis, she thrived; in fact, Jodie was the top salesperson each month, from January 2024 until she was constructively discharged by Lewis on September 25, 2024.

12. While employed at Lewis, she did not receive any write-ups or negative performance evaluations and her record as the top salesperson at Lewis was unblemished.

13. Since Jodie had previously worked at Lewis, it was aware that Jodie has suffered from Meniere's Disease when she started at Lewis in January 2024.

14. Menier's Disease is a chronic inner-ear disorder that causes hearing loss, as well as vertigo and tinnitus. In Jodie's case, she had experienced hearing loss.

15. Due to her hearing loss, Jodie wears hearing aids in order to help mitigate these symptoms.

16. Jodie's hearing loss is a disability under the American with Disabilities Act ("ADA.")

17. Jodie is also a heterosexual female, and is a member of a protected class under Title VII.

18. Pursuant to Title VII, Lewis is not to discriminate against Jodie due to her status as a woman, nor is she to be subject to harassment within the workplace based on her gender.

19. The hostile work environment claims stems from verbal comments made by Lewis employees in the workplaces.

20. The honeymoon phase of her reemployment with Lewis ended approximately two (2) months after she started when Jodie started facing harassment that lasted throughout her employment.

21. Beginning in March and continuing until her constructive discharge, Jodie was consistently berated on a weekly basis because of her disability by Mike Chrisman, her boss and the Sales Manager at Lewis.

22. For example, on one occasion, Mike Chrisman attempted to get Jodie's attention from across the sales room, but due to her disability, Jodie did not hear him.

23. Mike proceeded to cross the sales room floor, accosted Jodie, and asked her if she "had [her] fucking hearing aid in" as he had "been fucking talking to [her] all day."

24. When Jodie confirmed that she did have her hearing aids in, Mike continued his scolding, telling her that she needed "to get your fucking hearing aids serviced."

25. The comment that Jodie needed to "turn up her hearing aid" was the comment that was made most often, and was no less than weekly, sometimes daily.

26. On many occasions, Jodie would even see Mike Chrisman mocking her by holding his hand behind his ear and bending his ear lobe forward with his hand while saying "Eh?"

27. Additional comments were made by Jovani Roman and were in the same vein as those made by Mike Chrisman.

28. Jovani Roman was also a sales manager who directly supervised Jodie.

29. Furthermore, Andrew Gomez, a co-worker of Jodie's at Lewis, who also had a hearing disability, was mocked in the same fashion and with the same frequency.

30. Jodie complained to management and to Human Resources about both her treatment and the treatment of Andrew Gomez.

31. Jodie also saw this attitude on display with Milton Barnes, the former F & I manager.

32. Milton Barnes was disabled and had mobility issues because of a wheelchair.

33. Jodie overheard Mike Chrisman and Jovani Roman both making fun of Milton Barnes for being in a wheelchair.

34. When they made fun of Milton Barnes, it did not possess the tone or character of two individuals having fun with a close friend.

35. It possessed the tone and character of mocking another human being for not being like them.

36. Jodie complained to management and Human Resources about the treatment by staff and management of Milton Barnes.

37. At no point during her employment, despite everybody at Lewis Automotive being aware of her disability, was Jodie ever approached about any accommodations she might need for her disability.

38. Instead, her condition was met with ridicule, and she was retaliated against because of her complaints about the way she was treated, and the way that Milton Barnes and Andrew Gomez were treated.

39. Not only was Jodie treated differently due to her disability, but she was also singled out due to her sex.

40. During her time at Lewis, Jodie was one of the few women working for Lewis in the sales department.

41. Jodie was constantly berated by Mike Chrisman and Jovani Roman.

42. Jodie took note early on that this was something the sales managers only did to their female subordinates.

43. Other male employees who made the same or similar errors, were counseled with understanding.

44. Whereas, the females who worked at Lewis were treated differently.

45. The berating by a sales manager happened on a weekly basis, and almost always included vulgar comments generally, and also included derogatory terms for females, such as calling Jodie "a bitch."

46. The men at Lewis were not called a "bitch."

47. All of the sales staff, and most of the service department witnessed these incidents as these events occurred on the sales floor, in full view of customers and other employees.

48. It is important to note that though the sales managers treated Jodie differently than her male counterparts, they never wrote her up or disciplined her for any of the errors for which they felt the need to scream at her, curse at her, and demean her.

49. Additionally, Jim Weatherred ("Weatherred"), a sales associate, would often call Jodie "a bitch."

50. This happened not only when Weatherred was addressing Jodie, but Weatherred also addressed Jodie as a "fucking bitch" after two (2) customers came into the store and Weatherred offered to assist them.

51. The customers advised Weatherred they were at the store to see Jodie, and Weatherred responded "fucking bitch" as he walked away.

52. Weatherred was rude and crude to Jodie on a daily basis.

53. Weatherred did not refer to his male co-workers as "bitches."

54. Both Mike Chrisman and Jovani Roman heard the language and the tone of Weatherred's comments on multiple occasions and never disciplined him or attempted to stop the harassment of Jodie in any way.

55. In addition, several of the male employees, including Mike Chrisman and Jovani Roman made comments to Jodie about her physical appearance.

56. Most often, the comments were related to her breasts and their respective size.

57. On a weekly basis, Jodie had to endure these comments.

58. This included, but is not limited to comments such as "Your breasts are poppin'!" and "Nice rack."

59. When Jodie advised that such comments were inappropriate in the workplace, she was advised that: "This is what we do. Get used to it;" and "You've worked with men in the car business before, you knew what you were getting into."

60. On at least one occasion, Mike Chrisman queried Jodie about whether her breasts were real or fake.

61. Jodie advised of the inappropriateness of the comment and turned to Jovani Roman to make it stop.

62. Instead of receiving assistance from Jovani Roman he advised Jodie that she was being asked a question, and it was not polite to ignore a man's question.

63. These same two individuals, Mike Chrisman and Jovani Roman would also make comments about the physical attributes of other employees and customers while in Jodie's presence.

64. Those comments were similar to the comments they were making about Jodie and included but are not limited to the following: "Nice ass, "Nice rack," and "I would love to have those legs wrapped around me." This happened on a weekly basis, if not more often.

65. An additional example of the hostile work environment Jodie faced happened in early September.

66. Jodie returned from work to find someone had parked in her "salesman of the month" parking spot.

67. When Jodie asked the Service Manager, Bobby Lewton, about this, Bobby Lewton remarked that he should change the sign to read "Bitch of the Month."

68. Jodie reported this incident, as well as others, to Addy Melendez, the human resources manager for Lewis.

69. To Jodie's knowledge, Bobby Lewton was never disciplined for his harassing behavior.

70. Despite her repeated reports, this behavior did not change. In fact, Mike Chrisman would often joke about having to talk to HR after Jodie had complained, mockingly stating, "I wonder what HR is going to write me up for next."

71. Clearly Lewis knew about this harassment but did nothing to address it.

72. On September 3, 2024, Mike Shook ("Shook"), the General Manager of Lewis Chevrolet, sent an email to Jodie and others at Lewis Chevrolet.

73. The email advised that the F & I position at Lewis Chevrolet was open and that they should apply if interested.

74. Jodie advised Shook she was interested in obtaining finance training and she was interested in the position.

75. Shook initially told Jodie that he would complete the paperwork for Jodie to obtain the necessary training.

76. After telling her this, Shook never put in the paperwork for Jodie to obtain the training.

77. Shook later advised Jodie that he could not hire her for the position because the men who worked at Lewis would complain, and that as a result he was not approving Jodie for the training that would be necessary to fill the position.

78. Lewis instead hired the current F & I manager, Sean Sheets, who is a male.

79. On Saturday, September 21, Terry Darden ("Terry") approached Jodie with a bag of tamales and asked Jodie if she wanted any.

80. Jodie thanked Terry but declined this offer.

81. At that time, Mike Chrisman walked by, noticed the bag of tamales, and unprompted, exclaimed that he had a "big sack for you," as he groped his genitals.

82. Jodie was appalled by Mike's overt sexual comment and gesture, not knowing what to say in response.

83. Terry responded, telling Mike that they were not interested, as Mike again groped his genitals, and walked away.

84. Jodie obtained the video of Mike Chrisman groping his genitals, and planned on reporting his behavior to HR, yet again.

85. Later that day, Shook called Jodie into his office to inform her that HR would be talking with her on September 25, 2024 about her "issues."

86. Jodie thought she would be talking to HR about the hostile environment she was forced to work in, and the disparate treatment in regards to the F & I position.

87. On Wednesday, September 25, 2024 Jodie was called into a meeting with Addy Melendez and Cory Tagtmeyer.

88. Instead of addressing Jodie's complaints, Jodie's complaints were dismissed by Lewis.

89. Addy Melendez told Jodie that maybe she needed to quit or go to another location if she was struggling at Lewis' Garden City location.

90. Jodie then proceeded to show Addy Melendez and Cory Tagtmeyer the video of Mike Chrisman groping his genitals in hopes that showing them the video would convince Lewis to take her complaints of harassment seriously.

91. Instead, Jodie was advised by Lewis that nothing was going to be done to restrain the harassment.

92. Given the refusal by Lewis to acknowledge the harassment that she continued to face, Jodie she was not given the choice to continue in her current position in retaliation for her complaints, Jodie was constructively discharged on September 25, 2024.

**CLAIMS ASSERTED BY JODIE**

93. Jodie maintains that she is making the following claims of discrimination:

a. Disparate Treatment Based on Sex (Failure to train/promote) – Refusal to send to training/promote.

b. Disparate Treatment Based on Disability (Failure to train/promote) – Refusal to send to training/promote.

c. Disparate Treatment Mixed Motives, Sex & Disability (Failure to train/promote) – Refusal to send to training/promote.

d. Hostile Workplace, Sex.

e. Hostile Workplace, Disability.

f. Hostile Workplace, Mixed Motive, Sex & Disability.

g. Retaliation for reporting Title VII & ADA Discrimination to HR. – Failure to train/promote and advised to quit or transfer to a new location.

h. Constructive Discharge – Mixed Motive.

**COUNT I – DISPARATE TREATEMENT BASED ON SEX (FAILURE TO TRAIN/PROMOTE)**

94. Jodie incorporates the allegations contained in Paragraphs 1 -93 of this complaint as if set forth fully herein.

95. Jodie is female and a member of a protected class.

96. Based on the email Jodie received from Shook, she sought training from Lewis so that she could perform as the F & I manager.

97. Lewis, acting through Shook, advised Jodie that they would provide the training necessary so that she could be the F & I manager.

98. Shook then reversed that decision.

99. Shook's reversal was because of the reaction that the men at Lewis would have to Jodie becoming the F & I manager.

100. Jodie was denied both the training to become the F & I manager, and the position of F & I manager.

101. Lewis hired Sean Sheets who is a male.

102. Jodie seeks damages against Lewis in the form of back pay and other compensable damages, pre-judgment interest, front pay and other compensable damages, damages for negative tax treatment, pecuniary damages, punitive damages, attorney's fees and costs.

**COUNT II – DISPARATE TREATMENT BASED ON DISABILITY (FAILURE TO TRAIN/PROMOTE)**

103. Jodie incorporates the allegations contained in Paragraphs 1 -102 of this complaint as if set forth fully herein.

104. Jodie is disabled and a member of a protected class.

105. Based on the email that Jodie received from Shook, Jodie sought training from Lewis so that she could perform as the F & I manager.

106. Lewis, acting through Shook, advised Jodie that they would provide the training necessary so that she could be the F & I manager.

107. Shook then reversed that decision.

108. Shook's reversal was because of Jodie's hearing disability, which Lewis was aware of at the time it made its decision to deny Jodie training/promotion.

109. Jodie was denied both the training to become the F & I manager, and the position of F & I manager.

110. Lewis failed to make any accommodation for Jodie due to her disability.

111. Jodie seeks damages against Lewis in the form of back pay and other compensable damages, pre-judgment interest, front pay and other compensable damages, damages for negative tax treatment, pecuniary damages, punitive damages, attorney's fees and costs.

**COUNT III – DISPARATE TREATMENT BASED ON SEX AND DISABILITY (FAILURE TO TRAIN/PROMOTE – MIXED MOTIVE)**

112. Jodie incorporates the allegations contained in Paragraphs 1 -111 of this complaint as if set forth fully herein.

113. Jodie is both a female and disabled and is a member of a protected class.

114. Based on the email that Jodie received from Shook, Jodie sought training from Lewis so that she could perform as the F & I manager.

115. Lewis, acting through Shook, advised Jodie that they would provide the training necessary so that she could be the F & I manager.

116. Shook then reversed that decision.

117. Shook's reversal was because of Jodie's gender and the reaction the men at Lewis would have to her receiving a training and promotion, and her disability, which Lewis was aware of at the time it made its decision to deny Jodie training/promotion.

118. Jodie was denied both the training to become the F & I manager, and the position of F & I manager due to her sex and disability.

119. Lewis failed to make any accommodation for Jodie due to her disability.

120. Jodie seeks damages against Lewis in the form of back pay and other compensable damages, pre-judgment interest, front pay and other compensable damages, damages for negative tax treatment, pecuniary damages, punitive damages, attorney's fees and costs.

**COUNT IV – HOSTILE WORK ENVIRONMENT (SEX)**

121. Jodie incorporates Paragraphs 1 – 120 of the complaint as if set forth fully herein.

122. Jodie is a member of a protected class due to her sex.

123. Jodie was subject to unwelcome conduct from other employees at Lewis due to her sex.

124. The unwelcome conduct was due to bias, prejudice and hostility toward Jodie because of her sex.

125. The unwelcome conduct affected the terms and conditions of Jodie's employment. Further, the harassment had the purpose and effect of unreasonably interfering with Jodie's work environment, creating an intimidating, hostile and offensive work environment.

126. The harassers were multiple people in multiple positions, several of whom were in a supervisory position over Jodie.

127. Lewis failed to take prompt remedial action when it knew or should have known that Jodie was subjected to a hostile work environment.

128. The discrimination was intentional and done with reckless disregard for Jodie's federally protected rights.

129. Jodie seeks damages against Lewis in the form of back pay and other compensable damages, pre-judgment interest, front pay and other compensable damages, damages for negative tax treatment, pecuniary damages, punitive damages, attorney's fees and costs.

**COUNT V – HOSTILE WORK ENVIRONMENT (DISABILITY)**

130. Jodie incorporates Paragraphs 1 – 129 of the complaint as if set forth fully herein.

131. Jodie is a member of a protected class due to her disability.

132. Jodie was subject to unwelcome conduct from other employees at Lewis due to her disability.

133. The unwelcome conduct was due to bias, prejudice and hostility toward Jodie because of her disability.

134. The unwelcome conduct affected the terms and conditions of Jodie's employment. Further, the harassment had the purpose and effect of unreasonably interfering with Jodie's work environment, creating an intimidating, hostile and offensive work environment.

135. The harassers were multiple people in multiple positions, several of whom were in a supervisory position over Jodie.

136. Lewis failed to take prompt remedial action when it knew or should have known that Jodie was subjected to a hostile work environment.

137. The discrimination was intentional and done with reckless disregard for Jodie's federally protected rights.

138. Jodie seeks damages against Lewis in the form of back pay and other compensable damages, pre-judgment interest, front pay and other compensable damages, damages for negative tax treatment, pecuniary damages, punitive damages, attorney's fees and costs.

**COUNT VI – HOSTILE WORK ENVIRONMENT (MIXED MOTIVE)**

139. Jodie incorporates Paragraphs 1 – 138 of the complaint as if set forth fully herein.

140. Jodie is a member of a protected class due to her sex and disability

141. Jodie was subject to unwelcome conduct from other employees at Lewis due to her sex, her disability, or both.

142. The unwelcome conduct was due to bias, prejudice and hostility toward Jodie because of her sex, her disability, or both.

143. The unwelcome conduct affected the terms and conditions of Jodie's employment. Further, the harassment had the purpose and effect of unreasonably interfering with Jodie's work environment, creating an intimidating, hostile and offensive work environment.

144. The harassers were multiple people in multiple positions, several of whom were in a supervisory position over Jodie.

145. Lewis failed to take prompt remedial action when it knew or should have known that Jodie was subjected to a hostile work environment.

146. The discrimination was intentional and done with reckless disregard for Jodie's federally protected rights.

147. Jodie seeks damages against Lewis in the form of back pay and other compensable damages, pre-judgment interest, front pay and other compensable damages, damages for negative tax treatment, pecuniary damages, punitive damages, attorney's fees and costs.

**COUNT VII – RETALIATION (MIXED MOTIVE)**

148. Jodie incorporates Paragraphs 1 – 147 of the complaint as if set forth fully herein.

149. Jodie actively opposed the sex discrimination and the disability discrimination suffered by herself and others. She complained to her supervisors, to HR, and to the general manager, which was protected activity.

150. After Jodie made her complaints to Lewis, rather than investigate these claims, Lewis retaliated against Jodie by denying her training, suggesting she move to another location, or that she might just need to resign.

151. Lewis's decision to retaliate against Jodie was motivated by Jodie engaging in protected activity of reporting sex and disability discrimination to Lewis.

152. The retaliation by Lewis was intentional and done with reckless disregard for Jodie's federally protected rights.

153. Jodie seeks damages against Lewis in the form of back pay and other compensable damages, pre-judgment interest, front pay and other compensable damages, damages for negative tax treatment, pecuniary damages, punitive damages, attorney's fees and costs.

**COUNT VIII – CONSTRUCTIVE DISCHARGE (MIXED MOTIVE)**

154. Jodie incorporates the allegations contained in Paragraphs 1 -153 of this complaint as if set forth fully herein.

155. Jodie is both a female and disabled and is a member of a protected class.

156. Jodie was subject to unwelcome conduct from other employees at Lewis due to her sex and disability.

157. The unwelcome conduct was due to bias, prejudice and hostility toward Jodie because of her sex and disability.

158. The unwelcome conduct affected the terms and conditions of Jodie's employment. Further, the harassment had the purpose and effect of unreasonably interfering with Jodie's work environment, creating an intimidating, hostile and offensive work environment.

159. The harassers were multiple people in multiple positions, several of whom were in a supervisory position over Jodie.

160. Lewis failed to take prompt remedial action when it knew or should have known that Jodie was subjected to a hostile work environment.

161. A reasonable person in Jodie's shoes would feel they had no choice but to quit.

162. Lewis' failure to interdict the unwelcome conduct caused Jodie to quit on September 25, 2024.

163. Lewis' failure to interdict the unwelcome conduct was intentional and done with reckless disregard for Jodie's federally protected rights.

164. Jodie seeks damages against Lewis in the form of back pay and other compensable damages, pre-judgment interest, front pay and other compensable damages, damages for negative tax treatment, pecuniary damages, punitive damages, attorney's fees and costs.

WHEREFORE, Jodie prays that this Court judgment on all counts in her favor, for back pay and other compensable damages, pre-judgment interest, front pay and other compensable damages, damages for negative tax treatment, pecuniary damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court deems just and appropriate under the circumstances.

165. Jodie makes a request for a jury trial in Wichita, Kansas.

Respectfully Submitted:

/s/ Joseph T. Welsh
Joseph T. Welsh #27581
207 S. Inman St.
P.O. Box 606
Sublette, Kansas 67877
(620) 510-5030
(620) 510-5029 – Fax
joe@jtwelshlaw.com